IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:24-cv-00083-MR

| | | |
|---|---|---|
| **OSCAR PEREZ,**<br><br>**Petitioner,**<br><br>**vs.**<br><br>**LESLIE COOLEY DISMUKES, Secretary, North Carolina Department of Adult Correction,**<br><br>**Respondent.** | ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Respondent's Motion for Summary Judgment [Doc. 38] and the Petitioner's Motion for Leave to File Addendum [Doc. 44].

## I. BACKGOUND

The Petitioner commenced this action on January 27, 2023, by filing a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, in the U.S. District Court for the Southern District of Indiana. [Doc. 1]. The Petitioner is a prisoner who sustained his criminal convictions and consonant sentences in the State of Indiana but is presently residing in a North Carolina Department of Adult Correction ("NCDAC") prison facility. [Doc. 20].

According to the State of Indiana, the Petitioner is currently serving a 55-year sentence for murder, a 30-year sentence for attempted murder, and a 9-year sentence for possession of a dangerous device; his earliest possible release date is April 8, 2054. [Doc. 20 at 1]. At some point following these convictions, the Indiana Department of Correction ("IDOC") transferred the Petitioner to a correctional facility in North Carolina under the Interstate Corrections Compact ("ICC"). [Id.]. The ICC allows Indiana to contract with another ICC member state to house an Indiana offender in the other state's correctional institutions. [Id. at 2]. The States of Indiana and North Carolina (another ICC member state) executed such a contract pursuant to the ICC. [Doc. 35-2]. While the Petitioner is placed in an NCDAC facility, IDOC maintains ultimate jurisdiction and control over him, including the ability to direct the Petitioner's transfer to another state facility, release to parole, probation or discharge, or retake the inmate from North Carolina. [Doc. 20 at 2; Doc. 35-2 at 11]. Pursuant to the ICC contract between Indiana (the "sending state") and North Carolina (the "receiving state"), however, the NCDAC has jurisdiction to enforce its prison rules and regulations over Indiana inmates confined in North Carolina. "Inmates in the custody of the receiving state shall be subject to the receiving state's internal rules and regulations governing discipline and disciplinary sanctions." [Doc. 35-2 at 7].

In the present action, the Petitioner is challenging a prison disciplinary conviction he sustained while housed at the Alexander Correctional Institution in Taylorsville, North Carolina, an NCDAC facility situated within the geographical confines of this District. [Doc. 1]. The Petitioner was convicted on December 2, 2022, by an NCDAC hearing officer for possession of a controlled substance, an A12 disciplinary offense, which resulted in a 60-day loss of good-time credit, a 30-day assignment to restricted housing, a 90-day loss of recreation privileges, a 90-day visitation restriction, and a 90-day limited canteen draw. [Id. at 1]. The Petitioner administratively appealed his disciplinary conviction within the NCDAC, which affirmed his conviction and upheld the sanctions imposed, according to its decision rendered on January 5, 2023. [Doc. 20-3 at 1].

As mentioned above, the Petitioner commenced this action in the Indiana federal court. Before transferring the Petitioner's habeas action to this Court, the Indiana federal court directed the State of Indiana to answer the petition, which it did by filing its return on May 30, 2023. [Doc. 20]. The Petitioner responded to the return by filing his traverse on June 15, 2023. [Doc. 21]. Indiana thereafter filed a reply to the traverse on June 22, 2023. [Doc. 22]. The Indiana federal court then transferred this matter to this District by Order filed March 11, 2024. [Doc. 27]. At the time this case was

transferred, the Southern District of Indiana court noted, "Mr. Perez is incarcerated where he was convicted of the disciplinary offense. That is, in Taylorsville, North Carolina, which lies in Alexander County. Alexander County is in the Western District of North Carolina, Statesville Division." [Id. at 3]. After this matter was transferred here, the Petitioner filed his Motion to Change Venue back to the Southern District of Indiana. [Doc. 30].

The Petitioner was physically within this district at the time he filed his § 2254 petition. More importantly, the Petitioner is not challenging his underlying Indiana criminal judgments; he is challenging his prison disciplinary conviction which occurred at the Alexander Correctional Institution, a facility within the Western District of North Carolina. Accordingly, and for the reasons stated therein, the Court entered an Order denying the Petitioner's Motion to Change Venue as venue is proper here. [Doc. 42].

On November 5, 2025, the Respondent filed a Motion for Summary Judgment and supporting Memorandum asserting that she is entitled to a judgment in her favor as a matter of law. [Docs. 38; 39]. In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court entered an Order advising the Petitioner, who is proceeding *pro se*, of the heavy burden that he carries in responding to the Respondent's Motion for Summary

Judgment. [Doc. 42]. In addition to fulfilling its Roseboro obligation to the Petitioner, the Court's Order raised *sua sponte* the observation that the prison disciplinary claims the Petitioner has alleged in his § 2254 petition all appear to be unexhausted claims. [Doc. 42 at 11]. The Petitioner admits, and the Respondent does not contest, that he exhausted his administrative remedies by appealing his disciplinary conviction within the NCDAC. [Doc. 1 at 2]. The Petitioner, however, has provided no evidence showing that he thereafter sought judicial review of his claims in state court. Because a prisoner seeking federal habeas relief to restore forfeited good-time credits is required to exhaust his state judicial remedies in addition to his state administrative remedies, the Court advised the Petitioner that he must also address this exhaustion issue in any response to the Respondent's summary judgment motion he may file. [Doc. 42 at 13].

On December 12, 2025, the Petitioner filed his Response to the Respondent's summary judgment motion. [Doc. 43]. Shortly thereafter, on December 29, 2025, the Petitioner filed a Motion for Leave to File Addendum, and an Addendum to his Response to the Respondent's summary judgment motion. [Docs. 44; 45]. The Petitioner filed his Addendum "to be able to comply with the Court's Order in addressing exhaustion." [Doc. 44 at 1]. The matter is now ripe for the Court's review.

## II. DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state inmate must exhaust his available state remedies before he may pursue habeas relief in federal court. 28 U.S.C. § 2254(b)(1)(A). Further, a state inmate shall not be deemed to have exhausted his state remedies if he has the right under state law to raise, by any available procedure, the question presented. Id., § 2254(c). Exhaustion requires the prisoner to present his federal claims in state court to give the state the opportunity to review and correct any alleged violations of the prisoner's federal rights. Duncan v. Henry, 513 U.S. 364, 365-366 (1995). "[T]he prisoner must 'fairly present' his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim. The habeas petitioner must raise his claim before every available state court, including those courts . . . whose review is discretionary." Jones v. Sussex I State Prison, 591 F.3d 707, 712–13 (4th Cir. 2010) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)) (internal alterations omitted).

In a typical case, a North Carolina state inmate seeking federal habeas relief may satisfy § 2254's exhaustion requirement in one of two ways: (1) by directly appealing his judgment of conviction to the North Carolina Court of Appeals and then appealing and/or petitioning the North Carolina Supreme

Court for further review; or (2) by filing a state post-conviction proceeding (a Motion for Appropriate Relief) in the appropriate trial court and then pursuing any adverse decision through the North Carolina Court of Appeals.

For a state inmate challenging a prison disciplinary conviction in habeas, however, the exhaustion procedure is a bit different. The inmate must first pursue an administrative appeal of his conviction within the NCDAC, raising any federal claims first with that agency. Thereafter, he must then institute a civil action in state superior court, and pursue his federal claims through both the North Carolina Court of Appeals, and the North Carolina Supreme Court even if such review is discretionary, to exhaust his judicial remedies. Inscoe v. Ishee, 298 N.C. App. 358, 915 S.E.2d 448 (2025); Jones, 591 F.3d at 712–13. While the Petitioner here exhausted his administrative remedies, he did not exhaust his three federal constitutional claims concerning his disciplinary conviction because he neither raised nor pursued them to completion in the appropriate state courts. "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.), cert. denied, 522 U.S. 833 (1997)).

The Petitioner, quite candidly, admits that he did not pursue any state judicial remedies. "[I] spent weeks looking for a prisoner case that dealt with a prison disciplinary conviction that was adjudicated on the merits. Either [my] research was flawed or a state case on a prison disciplinary conviction that deals with good time credits does not exist." [Doc. 45 at 2]. For reasons not appearing of record, the Respondent has not addressed the Petitioner's failure to pursue his disciplinary claims in state court. When a State is ordered to respond to a habeas corpus petition, "it has a duty to advise the district court whether the prisoner has, in fact, exhausted all available state remedies." Grandberry v. Greer, 481 U.S. 129, 134 (1987) (citing Rule 5[1] of the habeas rules for federal district courts).

Instead, the Respondent simply filed a dispositive motion. This was improper. However, the reason a State must notify a court that a habeas petitioner has failed to exhaust state remedies flows in part from the provisions of 28 U.S.C. § 2254(b)(3), which provides that "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, *expressly*

[1] Rule 5(b) of the Rules Governing Section 2254 Cases requires the respondent, when addressing the allegations in the petition, to "state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations." Id.

*waives* the requirement." (emphasis added). If a State fails to notify a court that the petitioner's claims are unexhausted, and further fails to notify that court about whether it will waive such requirement, the court has no choice but to expend considerable resources engaging in the exhaustion analysis. The Court must do so because it cannot reach any dispositive motion while the exhaustion issue is unresolved and the Respondent's position on that issue is unknown. "Few issues consume as much of the scarce time of federal judges as the question whether a state prisoner adequately exhausted his state remedies before filing a petition for a federal writ of habeas corpus." Anderson v. Harless, 459 U.S. 4, 8 (1982) (Stevens, J., dissenting).

The Petitioner, for his part, asserts that the Respondent in past cases has taken contradictory positions recited in a number of decisions leading him to conclude that North Carolina has no judicial remedies for an inmate to exhaust when challenging a prison disciplinary conviction in habeas. [Doc. 45 at 1-4]. This issue, however, was clearly resolved by the case of Inscoe v. Ishee, 298 N.C. App. 358, 915 S.E.2d 448 (2025). In that case, state inmate Ashlee Inscoe sought a prison transfer within the NCDAC to a different facility. 298 N.C. App. at 359, 915 S.E.2d at 450. When this request was denied, Inscoe administratively appealed that denial within the NCDAC

without success. Id. Inscoe thereafter filed a petition for a writ of mandamus in the Wake County Superior Court which would direct the NCDAC to effect such transfer request, and the trial court granted the writ. Id. The state appealed and the appellate court reversed. The court of appeals concluded the issuance of the mandamus writ was impermissible because mandamus lies only to compel public officials to take action, but ordinarily it will not require them, in matters involving the exercise of discretion, to act in any particular way. 298 N.C. App. at 374, 915 S.E.2d at 459. In concluding that mandamus was not the proper remedy – and pertinent to the exhaustion issue presently before this Court – the appellate court stated the following:

> Additionally, we note Petitioner had an alternative legal remedy available to her. Our statutes, in the section immediately following the mandate for the Division of Prisons to adopt an Administrative Remedy Procedure, provide:
>
> * * * * * * *
>
>> (b) No State court shall entertain a prisoner's grievance or complaint which falls under the purview of the Administrative Remedy Procedure unless and until the prisoner shall have exhausted the remedies as provided in said procedure. If the prisoner has failed to pursue administrative remedies through this procedure, any petition or complaint he files shall be stayed for 90 days to allow the prisoner to file a grievance and for completion of the procedure. If at the end of 90 days the prisoner has failed to timely file his grievance, then the petition or complaint shall be dismissed. Provided, however, that the court can waive the exhaustion requirement if it finds such waiver to be in the interest of justice.

> N.C. Gen. Stat. § 148-118.2 (2023) [].
>
> ***Thus, our statutes clearly contemplate that an inmate dissatisfied with the outcome of the grievance process may file a petition or complaint in a state court for judicial review***. … Indeed, the North Carolina Industrial Commission has reviewed a case in which an inmate filed a claim pursuant to the State Tort Claims Act, Alston v. N.C. Dep't of Pub. Safety, 2017 WL 6949233, I.C. No. TA-24795 (N.C. Ind. Com.), and declined to hear another State Tort Claims Act claim because the inmate had not exhausted his administrative remedies, Taylor v. N.C. Dep't of Corr., 2010 WL 519701, I.C. No. TA-19535 (N.C. Ind. Com.) (citing N.C. Gen. Stat. § 148-118.2). ***Thus, Petitioner could have filed a complaint in superior court for judicial review of her prior grievances.***

298 N.C. App. at 380 n.12, 915 S.E.2d at 462 n.12 (emphasis added).

By his own admission, the Petitioner has not filed a complaint in any North Carolina Superior Court to seek judicial review of his federal constitutional claims he alleges stemmed from his prison disciplinary conviction. Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to a federal court, a state prisoner must give the state trial and appellate courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established review process. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

The Petitioner has failed to invoke one complete round of the state's established judicial review process in this matter, and thus his claims are dismissed without prejudice as unexhausted.

## IV. CONCLUSION

For the foregoing reasons, this action shall be dismissed without prejudice. The Court will grant the Petitioner's motion to proceed *in forma pauperis* and deny each of Petitioner's other pending motions as moot.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

**IT IS HEREBY ORDERED** that:

1. The Petitioner's §2254 Petition is **DISMISSED WITHOUT PREJUDICE**;

2. The Petitioner's Motion for Leave to File Addendum [Doc. 44] is **GRANTED**;

3. The Respondent's Motion for Summary Judgment [Doc. 38] is **DENIED WITHOUT PREJUDICE**;

4. The Court **DECLINES** to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk of Court is respectfully directed to terminate this civil case.

**IT IS SO ORDERED.**

Signed: September 10, 2026

Martin Reidinger
Chief United States District Judge